## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **LOUIS DIXON**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 2:10-0478-KD-N** |
| | ) | |
| **CITY OF SELMA**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action is before the Court on Defendants' Motion for Summary Judgment, brief, and evidentiary materials in support (Doc. 16).  Upon consideration, and for the reasons set forth herein, Defendants' motion for summary judgment is due to be **GRANTED.**

I.  <u>Procedural History</u>

On August 11, 2010, Plaintiffs filed a complaint against Defendants in the Circuit Court of Dallas County, Alabama, seeking damages and other appropriate relief under 42 U.S.C. § 1983 ("§ 1983") pursuant to an incident in which Plaintiff Louis Dixon ("Dixon") was arrested and Plaintiff E.N.N. was removed from parental custody for a time.  (Doc. 1-1).  On August 31, 2010, Defendants removed the case to this Court, citing jurisdiction pursuant to 28 U.S.C. § 1443.  (Doc. 1).

On September 1, 2010, Defendants answered the complaint, denying each and every allegation and demanding strict proof thereof.  (Doc. 2).  On May 13, 2011, Defendants filed this motion for summary judgment. (Doc. 16).  The Court set a response deadline.  (Doc. 17).  However, to date, Plaintiffs have not responded to the motion.

II.     <u>Standard of Review</u>

Summary judgment should be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

Defendants, as the parties seeking summary judgment, bear the initial responsibility of

informing the district court of the basis for their motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact.

<u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991) (quoting <u>Celotex Corp. v.

Catrett</u>, 477 U.S. 317, 323 (1986)).  Once the moving parties have satisfied their responsibility,

the burden shifts to the nonmovants to show the existence of a genuine issue of material fact.

<u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).

"If the nonmoving party fails to make 'a sufficient showing on an essential element of her

case with respect to which she has the burden of proof, 'the moving party is entitled to summary

judgment." <u>Id.</u> (quoting <u>Celotex Corp.</u>, 477 U.S. at 323 (footnote omitted)).  "In reviewing

whether the nonmoving party has met its burden, the court must stop short of weighing the

evidence and making credibility determination of the truth of the matter. Instead, the evidence of

the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and

quotations omitted).  However, the mere existence of any factual dispute will not automatically

necessitate denial of a motion for summary judgment; rather, only factual disputes that are

material preclude entry of summary judgment.  Lofton v. Sec'y of Dep't. of Children and Family

Servs., 358 F.3d 804, 809 (11th Cir. 2004).

With specific respect to the resolution of a summary judgment motion based on qualified

immunity, the Eleventh Circuit has declared:

> [W]e approach the facts from the plaintiff's perspective because "[t]he issues
> appealed here concern not which facts the parties might be able to prove, but,
> rather, whether or not certain given facts showed a violation of clearly established
> law." Sheth v. Webster, 145 F.3d 1231, 1236 (11th Cir. 1998). As this Court has
> repeatedly stressed, the "facts, as accepted at the summary judgment stage of the
> proceedings, may not be the actual facts of the case." Priester v. City of Riviera
> Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000). Nevertheless, for summary
> judgment purposes, our analysis must begin with a description of the facts in the
> light most favorable to the plaintiff. See Skrtich v. Thornton, 280 F.3d 1295, 1299
> (11th Cir. 2002).

McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).

Because Plaintiffs failed to respond to the motion for summary judgment and

consequently failed to identify any disputed facts in Defendant's brief, their "[f]ailure to do so

will be considered an admission that no material factual dispute exists". S.D. Ala. L.R. 7.2(b).

See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302–03 (11th Cir. 2009) (giving deference to

interpretation of local rule which provides that if a "party responding to a summary judgment

motion does not directly refute a material fact set forth in the movant's Statement of Material

Facts with specific citations to evidence, or otherwise fails to state a valid objection to the

material fact pursuant to Local Rule 56.1B(2), such fact is deemed admitted by the respondent.");

<u>Patton v. City of Hapeville, Ga.</u>, 162 F. App'x 895, 896 (11th Cir. 2006)[1] (unreported opinion) ("We conclude from the record, however, that the district court properly held that the defendants' statement of undisputed facts filed with their motion for summary judgment were admitted when Patton failed to respond to the statement of facts in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Northern District of Georgia.").

By failing to respond, Plaintiffs have not met their burden to present evidence upon which the Court could find that there is a genuine issue of material fact. However, the "mere failure of the non-moving party to create a factual dispute does not automatically authorize the entry of summary judgment for the moving party." <u>Dixie Stevedores, Inc. v. Marinic Mar., Ltd.</u>, 778 F.2d 670, 673 (11th Cir. 1985). The Eleventh Circuit Court of Appeals has held that "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion", and noted the provision in Fed. R. Civ. P. 56(e) that when "'the adverse party does not respond, summary judgment, *if appropriate,* shall be entered against the adverse party.'" <u>United States v. One Piece of Real Prop., 5800 S.W. 4th Ave., Miami, Fla.</u>, 363 F.3d 1099, 1101 (11th Cir. 2004)[2] (emphasis in original) (citation omitted). <u>See also</u> <u>Trs. of the Cent. Pension Fund of the Int'l Union of</u>

---

[1]    Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. U.S.Ct. of App. 11th Cir. Rule 36-2.

[2]    The Court notes that the current version of Rule 56(e) no longer contains this exact language. The Rule, however, does provide that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. Rule 56(e).

Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1040 (11th Cir. 2004) (vacating and remanding the district court's grant of summary judgment, in part, "[b]ecause summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment[.]")

The Eleventh Circuit further explained that

> [t]he district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. [ ] At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. The district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact. In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must indicate that the merits of the motion were addressed.

One Piece of Real Prop., 363 F.3d at 1101-02 (citations, internal quotations and footnote omitted).

Therefore, the Court "must review all of the evidentiary materials submitted in support of the motion for summary judgment" to "ensure that the motion itself is supported by evidentiary materials" *id*. at 1102, and review Defendants' "citations to the record to determine if there is, indeed, no genuine issue of material fact" such that granting summary judgment would be appropriate. Mann, 588 F.3d at 1303 (citing Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008)). "Even in an unopposed motion[,]" Defendants as the movants "still bear[] the burden of identifying 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe[] demonstrate[] the absence of a genuine issue of material fact." Id. (quoting Celotex Corp., 477 U.S. at 323).

III.    Findings of fact

Upon consideration of the affidavits and other documents submitted in support of their

motion for summary judgment, the Court determines that Defendants' statement of facts (Doc. 16 at 2-4) is deemed admitted and makes the following factual findings:

On August 26, 2008, the day of the mayoral election in the City of Selma, the Selma Police Department received several calls and complaints regarding a van with an attached trailer carrying a sofa, driving around town. According to the eyewitness reports, the occupants of the van were brandishing weapons and yelling disparaging, profane remarks about mayoral candidates. Also, according to eyewitnesses, the occupants of the van included Plaintiff Dixon, who was himself a mayoral candidate, and his wife, Felicia Owens Dixon ("Felicia Dixon"). (Docs. 16-3, 16-4).

Dixon and his wife were driving around the City of Selma campaigning against the sitting mayor. (Doc. 16-5 at 9, pp. 25-27). They dropped their daughter, Plaintiff E.N.N., off at school around seven o'clock that morning, picked her up from school around three and drove around the city both in between and after so doing, before the arrest at issue. (Id., p. 28). A heavy-duty utility trailer was attached to the van for people to ride along and campaign. (Id. at 10, p. 29). Later that same day, Selma police officers responded to a call of disorderly conduct and shots fired in front of or near Carter's Drug Store in downtown Selma. (Doc. 16-1 at 2, Narrative). Several eyewitnesses identified a van with an attached trailer as carrying the suspected shooters. (Docs. 16-3, 16-4). Eyewitnesses also positively identified Dixon and Felicia Dixon as occupants of the van and as the people brandishing weapons. (Id.).

Following discussions with eyewitnesses, Officer Frederick Walker stopped the subject van and had the driver and all passengers exit the vehicle. (Id.; Doc. 16-1 at 2, Narrative). Dixon was the driver of the van and his wife was a passenger. (Doc. 16-1 at 2, Narrative; Doc. 16-5 at 12, p. 38). Individuals identified as William Hopkins and Claude Hester were also

passengers in the van. (Id.). After all of the subjects were removed, the officers checked the vehicle for the weapons that discharged the reported shots. (Doc. 16-1 at 2, Narrative).

The initial search was a "plain view" search. During the plain view search, the police officers saw, in plain sight, a handgun on the driver's side of the van. A semi-automatic rifle and a shotgun were sitting in plain view in the back seat of the van. Another handgun was discovered underneath a sofa cushion on the attached trailer. (Docs. 16-3, 16-4). In all, the police officers found two handguns, one semi-automatic weapon and a shotgun in the vehicle. (Doc. 16-1 at 4, Narrative; Doc. 16-5 at 15-16, pp. 52-53). Ammunition for all four guns was also in the van. (Doc. 16-5 at 17, p. 57). At the scene, none of the detained subjects stated that they had a valid permit to carry the handguns or present a valid permit for the handguns. (Docs. 16-3, 16-4). In fact, Dixon was a convicted felon with a prior conviction of robbery. (Doc. 16-2).

During the search of the weapons, the officers also found the Dixons' daughter, then five years old, in the back of the van. (Doc. 16-1 at 4, Narrative; Doc. 16-5 at 12, pp. 38-39). According to Felicia Dixon, the rifle and shotgun were located "next to where Mr. Hester was seated" and, therefore, just in front of where Dixon's daughter was seated. (Doc. 16-5 at 12, pp. 39, & 17, pp. 59). All of the adult occupants of the vehicle were arrested and charged with carrying a handgun without a permit, in violation of Alabama Code § 13A-11-73. (Doc. 16-1 at 1, 4). Based on this charge, Dixon was charged with possession of a pistol after being convicted of a crime of violence (Robbery 1st Degree), in violation of Alabama Code § 13A-11-72. (Doc. 16-2). Dixon was indicted by a Dallas County Grand Jury on this criminal charge, which is still pending. (Id.). Dixon and his wife were also charged with endangering the welfare of a child, in violation of Alabama Code § 13A-13-6. (Doc. 16-1 at 1, 4).

At the time the Dixons were arrested, the police also took custody of E.N.N.  The Alabama Department of Human Resources ("DHR") ended up sending E.N.N. to stay with her grandmother, Felicia Dixon's mother, for three months.  Felicia Dixon was initially allowed to see her daughter during this time, though her mother eventually stopped allowing such visitation. (Doc. 16-5 at 19-20, pp. 68-70).

Felicia Dixon filed a complaint in the Circuit Court of Dallas County, Alabama, on September 15, 2009, naming as defendants the City of Selma, six individual Selma police officers, and Tanya Miles, one of the individuals who called the police to report the actions of the Dixons.  As the Complaint alleged a cause of action pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, the case was subsequently removed to this Court by the defendants.  (Dixon v. City of Selma, Civil Action No. 2:09-00684-KD-N, Doc. 1).  This Court granted summary judgment as to all defendants in the action filed by Felicia Dixon, finding that the arrest was valid based on the "probable cause abundantly evident in this case" and that the individual police officers were entitled to immunity.  Dixon v. City of Selma, supra, 2010 WL 5094366, at *7-8, 2010 U.S. Dist. LEXIS 129812, at *12-27, adopted by 2010 WL 5341882, 2010 U.S. Dist. LEXIS 129911 (S.D. Ala. Dec. 8, 2010) ("Dixon I").  This Court also granted summary judgment in favor of the City of Selma.  Id. at WL *9, LEXIS *27-32.  Defendants City of Selma, Jeffery Hardy, Ray Blanks and Frederick Walker were also defendants in Felicia Dixon's case.  (Dixon, Civil Action No. 2:09-00684-KD-N, Doc. 1-1).

IV.    Conclusions of law

A.    Dixon's Claims

Dixon claims that as a result of his arrest and detention stemming from the events of August 26, 2008, Defendants violated his "civil rights under color of state law and Article I, §

6,7 of the Constitution of Alabama 1901." (Doc. 1-1 at 1, ¶ 4). Specifically, he alleges that he was arrested without probable cause and that the arrest violated his rights "to be free from unreasonable arrest" under the Fourth Amendment and to due process under the Fourteenth Amendment. (Id. at 2, ¶¶ 8-9).

Defendants claim that the individual police officer defendants are entitled to qualified immunity and that no cause of action exists against the defendant City of Selma. Defendants also claim that this Court's determinations in Dixon I bar litigation of Dixon's claims under the doctrine of *res judicata*.

       1.    *Res Judicata*

"*Res judicata*" is the collective term for two separate doctrines: "claim preclusion" and "issue preclusion." Taylor v. Sturgell, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Id. (internal citations and quotations omitted). "Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999).

Defendants claim that they are entitled to both issue preclusion and claim preclusion in this case due to the Court's judgment in Dixon I, in which the same cause of action was asserted by Dixon's wife, Felicia Dixon, and which arose from the same incident. All Defendants in the present case, with the exception of J. Crum, were also defendants in that case.

"Under the doctrine of res judicata, a claim is barred by prior litigation if: (1) there is a

final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Griswold v. Cnty. of Hillsborough, 598 F.3d 1289, 1292 (11th Cir. 2010). There is no doubt that Felicia Dixon's case reached a final judgment on the merits, that the decision was rendered by a court of competent jurisdiction, and that the same cause of action is involved in both her case and the present one. Defendants claim that because Louis Dixon and Felicia Dixon are husband and wife, Dixon was in privity with his wife in Dixon I such that his claims are barred in the present case, despite not having been a plaintiff in Dixon I. To justify such non-party preclusion, Defendants cite to the doctrine of "virtual representation," articulated by the Eleventh Circuit in such cases as Jaffree v. Wallace, 837 F.2d 1461 (11th Cir. 1988). This doctrine has not found acceptance with the United States Supreme Court, however, and the Eleventh Circuit has taken note, interpreting Taylor v. Sturgell, supra, as having "explicitly rejected the virtual representation exception previously used in this Circuit and elsewhere." Griswold, 598 F.3d at 1292.

Issue preclusion, also known as collateral estoppel, applies if the following conditions are met: "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986). However, "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." Taylor, 553 U.S. at 892.

As to what constitutes acceptable application of non-party preclusion, the Eleventh

Circuit held:

> The Supreme Court recently clarified the use of nonparty preclusion in <u>Taylor v. Sturgell</u>, 553 U.S. 880, 128 S. Ct. 2161, 2172-73, 171 L. Ed. 2d 155 (2008). As a general rule, "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." <u>Id.</u> at 2171 (quoting <u>Hansberry v. Lee</u>, 311 U.S. 32, 40, 61 S. Ct. 115, 117, 85 L. Ed. 22 (1940)). The rule against nonparty preclusion, however, is subject to six categories of exceptions. <u>Id.</u> at 2172. A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants. <u>See id.</u> at 2172-73.

<u>Griswold</u>, 598 F.3d at 1292.

Of the six categories of permissible non-party preclusion articulated in <u>Griswold</u>, the only

two that seem applicable at first blush to the facts of this case are the "substantive legal

relationship" and "nonparty adequately represented" categories. <u>Taylor</u> provides examples for

both of these categories:

> . . . [N]onparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor . . .

> . . . [W]e have confirmed that, in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries.

553 U.S. at 894-95 (internal citations and quotations omitted).

Though  the list of examples for each category is not exhaustive, the examples provided

convince the Court that privity based on a spousal relationship is not intended by either category

as articulated by the Supreme Court. Defendants have presented no authority to the contrary, nor have they presented evidence that any of the other categories of permissible non-party exclusion apply. Claim preclusion and issue preclusion are both affirmative defenses, for which Defendants bear the burden of proof, see id. at 907, and the Court find that Defendants have not met this burden. Therefore, Dixon is not prevented by *res judicata* from litigating the claims and issues in this case.

2.      The Merits

(a)      *The individual defendant police officers are entitled to qualified immunity.*

"Public officials are entitled to qualified immunity so long as their discretionary actions do not violate clearly established statutory or constitutional rights." Autery v. Davis, 355 F. App'x 253, 256 (11th Cir. 2009) (citing Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009)). Under Saucier v. Katz, 533 U.S. 194 (2001), the "threshold question" to be determined before any other inquiry is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. Only if the answer to that question was affirmative may the Court proceed to determine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." Id. The two-part inquiry established in Saucier is, however, no longer mandatory. Pearson v. Callahan, ---- U.S. ----, 129 S. Ct. 808, 818 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

"Qualified immunity is a privilege that provides 'an immunity from suit rather than a mere defense to liability'." Townsend v. Jefferson Cnty., 582 F.3d 1252, 1258 (2009). See also

McCullough, supra, 599 F.3d at 1205 ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (same). The defense of qualified immunity is predicated on a showing by the defendant police officer that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations omitted).

"To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). See also Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004) ("Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. . . [and] we look to the general nature of the defendant's actions. . .").

There is ample evidence in the record before the Court that the officers' decision whether or not to detain/arrest Dixon was an action taken pursuant to their discretionary authority. It is undisputed that the officers were on duty and "were acting within the purview of their authority" when they performed the traffic stop and arrested the plaintiff. There is no question that the acts of the defendant officers "fell within the [police officers'] job responsibilities." Crosby, supra. The officers performed the duties of their jobs in that they responded to a call regarding suspects brandishing weapons and firing weapons; performed a traffic stop and pulled over the vehicle identified by eyewitnesses as carrying the suspects who allegedly fired the shots; detained the suspects and performed a plain view search which resulted in the discovery of two handguns, a

rifle, a shotgun and a five-year old child; and, based upon eyewitness reports and their own observations, placed Dixon and other occupants of the vehicle under arrest. Accordingly, the Court finds that the officers were exercising their discretionary authority at the time of the incident made the basis of Plaintiffs' complaint.

Because the defendant police officers established that they were acting within their discretionary authority, the burden then shifts to the plaintiff to show that it would be inappropriate for the police officers to receive qualified immunity in this case. Lee, 284 F.3d at 1194.[3] To meet his burden, Dixon must first show that, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." Id. (quoting Saucier, 533 U.S. at 201). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. The second step of the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999) ("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established")). "This is not to say that an official action is protected

_____

[3] "Courts utilize a two-part framework to evaluate qualified immunity claims. One inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. If the facts, construed as they must be in this summary judgment appeal in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.' Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (internal citations omitted).

by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotations and citations omitted). In other words, Dixon must show that the defendant police officers had "fair warning" that their alleged conduct was unconstitutional. Id. at 741. See also Pearson, supra, 129 S. Ct. at 818-21 (The process for establishing a qualified immunity defense can be tailored to the details of a particular case.).

Under the Fourth Amendment, an individual has a right to be free from "unreasonable" searches and seizures and an arrest of a person constitutes a seizure of that person. Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007). Whether a seizure by an arrest was "reasonable" under the Constitution turns on a finding of probable cause, Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004), a determination made under the totality of the circumstances, Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). Probable cause to arrest for the commission of a crime may be found when the "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Id. (citing United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)). A warrantless arrest without probable cause violates the Constitution. Id. (citing Kingsland, 382 F.3d at 1226; Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999).

However, even if an officer arrests an individual without probable cause in violation of the Constitution, this does not automatically strip the officer of qualified immunity protection: "We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." Skop, 485 F.3d at 1137. See also Anderson, 483 U.S. at 641. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have

indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." Id.

In wrongful arrest cases, the "clearly established" prong is frequently framed as an "arguable probable cause" inquiry. "[T]he court applies the standard of 'arguable probable cause,' that is, whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s] could have believed that probable cause existed to arrest.'" Id. In other words, when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity if he had "arguable probable cause" to make the arrest. Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009). See also Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004) ("Given our conclusion that [defendant] had actual probable cause and no constitutional violation occurred, we need not discuss the arguable probable cause doctrine...for purposes of determining the second prong of the qualified immunity test."); Scarbrough v. Myles, 245 F.3d 1299, 1303 (11th Cir. 2001) ("Because [defendant] had arguable probable cause to arrest [plaintiff], he violated no clearly established law."); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993).

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Case, 555 F.3d at 1327 (citing Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983)). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" Id. (quoting Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (quoting Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. l990)). Probable cause must be assessed "not with clinical detachment but with a common sense view to the realities of normal life." Id. (quoting Wilson v. Attawa, 757 F.2d 1227, 1235 (11th

Cir. 1985)).  The probable cause determination is an objective one.  Id. (citing Lee, 284 F.3d at 1188); Rankin v. Evans, 133 F.3d 1425, 133 (11th Cir. 1998).  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition ..."  Id. (quoting Saucier, 533 U.S. at 201). The key element in "arguable probable cause" is what information the officer knew or had at the time of the arrest to warrant a prudent person to believe that the suspect had committed an offense.  Gerstein v. Pugh, 420 U.S. 103, 111 (1975); Rankin , 133 F.3d at 1435.

The constitutional violations alleged by Dixon in his complaint involve two closely related claims which arise from his arrest - - a claim for unreasonable arrest and a claim for violation of due process.  Dixon's unreasonable arrest claim is founded on the United States Constitution's Fourth Amendment prohibition against "unreasonable searches and seizures," and "an arrest is a seizure of the person."  Skop, 485 F.3d at 1137; Case, 555 F.3d at 1326.  A seizure is unreasonable only if carried out in the absence of probable cause.  Id.  Dixon's due process claim is founded on the Fourteenth Amendment protection against deprivation of liberty without due process of law.  An incarceration subsequent to arrest is a deprivation of liberty without due process of law only when the arrest was made in the absence of probable cause.  Case, 555 F.3d at 1330.

The critical question relative to both of Dixon's claims is the existence, or lack thereof, of actual or arguable probable cause to arrest Dixon.  Dixon has presented no evidence to dispute that, during the time he was driving around Selma campaigning, the police received complaints that Dixon and the other occupants of the van were brandishing weapons and shouting obscenities.  Dixon also does not dispute that the police received a call the same day "regarding shots being fired."  (Docs. 16-1 at 2, Narrative; 16-2; 16-3).  Dixon has failed to explain how it

could be deemed unreasonable for a police officer to respond to eyewitness reports that shots were fired from a particular vehicle in which particular people are identified by stopping that vehicle and subsequently arresting those identified individuals after guns are discovered not only in proximity to the occupants but to a five year old child. Based on the record, there existed probable cause to support the officers' actions and they are, therefore, entitled to immunity from any claim for unreasonable arrest or violation of due process. See Terry v. Ohio, 392 U.S. 1 (1968) (An officer may conduct a stop if he has a reasonable suspicion that criminal activity is afoot.). As such, the individual police officer defendants are entitled to summary judgment in their favor as to Dixon's claims.

(b) *Dixon has failed to state a viable claim against the City of Selma.*

As illustrated above, the record before the Court reflects that the defendant police officers had sufficient probable cause to arrest Dixon. Consequently, Dixon's constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution were not violated and neither the City of Selma nor the individual defendants are liable in any manner to Dixon.

Even assuming that a constitutional deprivation had occurred, Dixon has failed to proffer any evidence that a policy or a custom of the City of Selma was the moving force behind such a constitutional deprivation, a requisite to the imposition of any municipal liability under 42 U.S.C. § 1983. As the Supreme Court made clear in Monell v. Department of Social Services of New York, 436 U.S. 658, 691 (1978), there can be no respondeat superior liability for § 1983 claims. A municipality is directly liable under § 1983 only if the violation of the Plaintiffs rights is attributable to a municipality policy or custom. Id. Consequently, the City of Selma may only be held liable if its own custom or policy inflicts a constitutional injury. Id. ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some

nature caused a constitutional tort."). See also City of St. Louis v. Praprotnik, 485 U.S. 112, 125 n.2 (1988) ("[M]unicipalities [are] responsible under 1983 only for the execution of official policies and customs, and not for injuries inflicted solely by employees or agents."); Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipality liability is limited to action for which the municipality is actually responsible."). It is, therefore, the burden of the plaintiff to specifically identify a policy or custom of the City of Selma which caused his alleged injury. See McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004) ("This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.'" (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997))).

In order to show that the municipality, through its deliberate conduct, was the 'moving force' behind an alleged injury, a plaintiff must show not only that the municipal action was taken with the requisite degree of culpability but that a direct causal link exists between the action and the alleged deprivation of federal rights. Brown, 520 U.S. at 404. Thus, in order to impose §1983 liability on the City of Selma, Dixon must show the following: "(1) that his constitutional rights were violated; (2) that the [City of Selma] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell, 392 F.3d at 1289 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

Dixon has failed to make a showing of any custom or policy of the City of Selma which resulted, or even might have resulted, in the deprivation of a constitutional right. The City of

Selma is, therefore, entitled to summary judgment in its favor as to Dixon's claims.

    (c)    *Dixon has failed to state a claim under the Alabama Constitution.*

Dixon states in his complaint that "[t]his action is brought for damages and other appropriate relief under 42 U.S.C. § 1983 for violation of the Plaintiff's civil rights under color of state law and Article I, § 6, 7 of the Constitution of Alabama 1901." (Doc. 1-1 at 1, ¶ 4). However, no cognizable state law claims are alleged in the complaint.

Section 6 is captioned "Rights of persons in criminal prosecutions generally; self incrimination; due process of law; right to speedy, public trial; change of venue," and states as follows:

> That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; and to have a copy thereof; to be confronted by the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to testify in all cases, in his own behalf, if he elects so to do; and, in all prosecutions by indictment, a speedy, public trial, by an impartial jury of the county or district in which the offense was committed; and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty, or property, except by due process of law; but the legislature may, by a general law, provide for a change of venue at the instance of the defendant in all prosecutions by indictment, and such change of venue, on application of the defendant, may be heard and determined without the personal presence of the defendant so applying therefor; provided, that at the time of the application for the change of venue, the defendant is imprisoned in jail or some legal place of confinement.

Ala. Const. Art. I, § 6.

Section 7 is captioned "Accusation, arrest and detention; punishment limited to laws established prior to offense," and states as follows:

> That no person shall be accused or arrested, or detained, except in cases ascertained by law, and according to the form which the same has prescribed; and no person shall be punished but by virtue of a law established and promulgated prior to the offense and legally applied.

Ala. Const. Art. I, § 7.

Either section may form the basis for various state law claims, e.g., false imprisonment, false arrest, or malicious prosecution. However, Dixon has failed to allege any of these state law claims. His conclusory allegation that his rights under the Alabama Constitution have been violated is not sufficient to state a claim or a cause of action but instead is simply his legal conclusion. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

B.    E.N.N.'s Claims

The complaint alleges that E.N.N. "was taken into custody, placed with DHR, and deprived of her rights under the Fourteenth Amendment of the United States Constitution to due process of law. Plaintiff was forced during this period of confinement to be without the love and support of her parents and has suffered mental anguish as a result of their conduct . . ." (Doc .1-1 at 2, ¶ 11). DHR is not a defendant to this action. Therefore, whatever issues that may have arisen after custody of E.N.N. was turned over to DHR are not at issue.

To the extent E.N.N. contends that her rights were infringed while she was in the custody of the Selma police department, the Court finds that the officers acted reasonably in securing the child while her parents were being arrested, that her rights were not infringed, and that the officers are entitled to qualified immunity regardless. Cf. Matheny v. Boatright, 970 F. Supp. 1039, 1043-46 (S.D. Ga. 1997) (In holding that "police officers have a duty, in certain circumstances, not to abandon children who are entrusted to the care of an arrestee or passengers who are relying on an arrestee for transportation[,]" the court found that an arrestee's minor children were not deprived of their rights under the Fourth and Fourteenth Amendments when they were taken by the police to a detention facility along with the arrestee, when no other caregiver was present or reasonably reachable at the time of the arrest); Cherrington v. Skeeter,

344 F.3d 631, 635-42 (6th Cir. 2003) (When minor child was held by police along with arrestee mother for 24 hours without being allowed to leave, officers were entitled to qualified immunity as to minor's § 1983 claims.).  Because E.N.N. suffered no constitutional deprivation due to the officers' actions, the City of Selma is therefore also not liable to E.N.N.  Even assuming E.N.N. had suffered a constitutional deprivation, however, she has failed to identify a policy or custom of the city which would have lead to such a deprivation.  See Monell, supra, 436 U.S. at 691.

Finally, for the reasons stated in Section IV(A)(2)(c), supra, the Court finds that E.N.N. has also failed to allege any state law claims.  Therefore, Defendants are entitled to summary judgment in their favor as to E.N.N.'s claims.

V.      Conclusion

        For the abovementioned reasons, the Court finds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on all claims.  Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. 16) is **GRANTED**.

        Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

        **DONE** and **ORDERED** this the **11**[th] day of **July, 2011**.

                                        /s/ Kristi K. DuBose
                                        **KRISTI K. DuBOSE**
                                        **UNITED STATES DISTRICT JUDGE**